IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

In Re:

JOSEPH NORMAN SHORT, JR.,

    Debtor.

_____

Case No. 19-11555

DEBORAH KEETON,

    Plaintiff,

v.

JOSEPH NORMAN SHORT, JR.,

    Defendant.

Adversary Case No. 19-1041

<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING TRIAL</u>

This case came before the court for trial on December 6, 2019 on the limited issue of the plaintiff Deborah Keeton's nondischargeability claim pursuant to 11 U.S.C. § 523(a)(6) against the defendant-debtor Joseph Norman Short, Jr. related to a state court judgment for trespass. Ms. Keeton requests that the court find that the debt owed to her is nondischargeable in Mr. Short's chapter 7 bankruptcy filed on May 9, 2019. The court heard testimony from both Ms. Keeton and Mr. Short and admitted plaintiff's exhibits 1-9 and defendant's exhibit A. For the reasons discussed below, the court finds that the state court judgment is nondischargeable.

<u>Findings of Fact</u>

Ms. Keeton sued her neighbor Mr. Short for determination of the boundary line between their properties and for trespass. On December 21, 2017, following a nonjury trial, the Circuit Court of Baldwin County, Alabama found in favor of the Ms. Keeton and against Mr. Short on both claims. The court's order (pl. ex. 5) states in pertinent part:

The Court determines that the Defendant [Mr. Short] trespassed upon the property of the Plaintiff [Ms. Keeton]; that said trespass was committed after the Plaintiff had made known to the Defendant the location of her coterminous boundary line with the Defendant; that said trespass was attended by rudeness, wantonness, recklessness, or was done in an insulting manner or was accompanied by circumstances of malice, oppression, aggravation or gross negligence; that the real property of the Plaintiff was damaged by said trespass and that the Plaintiff experienced mental suffering as a direct and proximate consequence of the trespass.

(*Id.* at ¶4). The state court awarded $25,000 for the damages incurred by Ms. Keeton "as a result of the trespass." (*See id.* at ¶5).

This court informed the parties at the scheduling conference and in its scheduling order that it did not intend to retry the issues decided by the state court. Therefore, there is no dispute that Mr. Short did in fact trespass onto Ms. Keeton's property and caused damages of $25,000. *See Beem v. Ferguson*, 713 F. App'x 974, 983 (11th Cir. 2018) ("Collateral estoppel . . . bars the relitigation of issues that have been adjudicated in a prior action . . . .).

Ms. Keeton, a social worker, lives by herself in a rural area of Baldwin County. She testified that she has lived in her home for over 30 years and that she purchased the property due to its secluded and private nature. The court admitted into evidence plaintiff's exhibit 6, which consists of photographs of Ms. Keeton's home and property both before and after Mr. Short's trespass. Ms. Keeton also testified about the photographs and about her property. Prior to 2016, Ms. Keeton's view out of her back deck was completely closed in; she could not see the adjoining property through the trees.

Mr. Short purchased the property located next to Ms. Keeton's property in late 2015 or early 2016. On Thursday, January 21, 2016, Ms. Keeton saw an unknown man whom she later learned was Mr. Short coming out of the woods into her back yard. She spoke with him, and he

explained that he had purchased the property behind her. She requested a copy of his survey, which he later placed in her mailbox. Mr. Short did not have his own survey done; it was the bank's survey from when he purchased the property.

The same day she met Mr. Short, Ms. Keeton posted "no trespassing" signs on several trees on her property. However, on Sunday of that week, Ms. Keeton saw people in her back yard, including Mr. Short. She told him that he was on her property and to leave, but he said it was his property. Ms. Keeton then contacted the sheriff's office. When the sheriff's deputies arrived, Ms. Keeton gave them a copy of the survey that she had obtained on her property and Mr. Short gave them a copy of his survey. The deputies told Ms. Keeton that Mr. Short's survey was later in time and refused to stop him. Ms. Keeton called the company that prepared her survey, but they told her they could not come out for a week.

Mr. Short told Ms. Keeton that he was going to begin clearing the disputed property the next day, Monday, which he did. As reflected in exhibit 6 and discussed by Ms. Keeton, Mr. Short cut all the trees in the disputed area behind Ms. Keeton's house. Exhibit 6 further shows that the trees were not saplings; most if not all of the trees were mature trees that were higher than Ms. Keeton's home. Although there was no direct testimony as to the exact size of the area, the court estimates from the admitted photographs (*see, e.g.*, pl. ex. 6, pp. 22-24) that Mr. Short cut a swath of trees about 10 or 15 yards wide on Ms. Keeton's property.

As a result, Ms. Keeton lost the wooded seclusion of her back yard. Mr. Short's mobile home and abandoned furniture are now visible from her back porch. (*See* pl. ex. 6). Mr. Short continued to do construction work on his property at all hours of the night with accompanying noise and lights which disturbed Ms. Keeton's solitude as a result of the loss of the tree barrier.

3

Mr. Short and his family members continued to come onto the disputed area. Ms. Keeton put up "no trespassing" signs, at least one of which was torn down.

The deed by which Mr. Short claimed title to the property (*see* pl. ex. 1)[1] stated that the deed was made subject to "[a]ny claim arising by reason of record distances and bearing in the legal description in Real Property Book 2016, page 495 and the legal description in survey dated January 18, 2016, by David Lowery (Al. Reg. No. 26623) being different." Mr. Short testified that his actions were based on the bank survey. He wanted to raise horses on his property and had rented equipment to clear it. He testified that his haste in doing so after Ms. Keeton told him that he was on her property was because he worked out of town, had only a couple of weeks available to do the clearing work, and had already rented the necessary equipment.

<u>Conclusions of Law</u>

"In order for a particular debt to be excepted from discharge, a plaintiff must prove by a preponderance of the evidence that the defendant's conduct fits within the exception to discharge." *In re Cochran*, No. 18-14-JCO, 2019 WL 4072846, at *4 (Bankr. S.D. Ala. Aug. 28, 2019). 11 U.S.C. § 523(a)(6) excepts from discharge any debt that results from "willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." "[A] creditor must prove that the injury at issue is both willful and malicious." *See In re Reid*, 598 B.R. 674, 683 (Bankr. S.D. Ala. 2019).

---

[1] Exhibit 1 is the initial state court complaint. The deed, an exhibit to the complaint, is in Mr. Short's father's name, but there is no dispute that his father conveyed the property to him shortly after purchase. The admitted exhibits show that Mr. Short, Sr., was the original defendant, but Ms. Keeton filed an amended complaint and made Mr. Short, Jr. a defendant in the state court case.

4

"'[W]illfulness' requires a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another." *See In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012) (citation and quotation marks omitted). "A debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Id.* (citation, quotation marks, and brackets omitted); *see also In re Reid*, 598 B.R. at 682. "Recklessly or negligently inflicted injuries are not excepted from discharge under § 523(a)(6)." *In re Jennings*, 670 at 1334. "Because a debtor will rarely admit to a subjective intent to cause injury, in addition to what a debtor may admit to knowing, a bankruptcy court may consider circumstantial evidence that tends to establish what the debtor may have actually known when taking the injury-producing action." *In re Yeager*, 500 B.R. 547, 551 (Bankr. S.D. Ohio 2013) (citation and quotation marks omitted).

"'Malicious' means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Id.* (citation and quotation marks omitted). "To establish malice, 'a showing of specific intent to harm another is not necessary.'" *Id.* (citation omitted). "Put differently, for the purposes of § 523(a)(6), malice can be implied." *In re Kane*, 755 F.3d 1285, 1294 (11th Cir. 2014) (citation, quotation marks, and brackets omitted). "'Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice.'" *In re Monson*, 661 F. App'x 675, 683 (11th Cir. 2016).

The court must decide whether Mr. Short's trespass constituted a "willful and malicious injury by the debtor to another entity or to the property of that entity" under § 523(a)(6).[2] Ms.

---

[2] "Aside from 'willful' intent and 'maliciousness,' § 523(a)(6) also requires that the debtor's conduct injure another entity or its property." *In re Smith*, 537 B.R. 1, 15 (Bankr. M.D. Ala. 2015). That element is not in dispute based on the state court judgment in Ms. Keeton's favor.

5

Keeton argues (1) that collateral estoppel applies to the state court judgment and (2) that the facts proven at trial show willful and malicious injury in any event. The court addresses each argument in turn below.

Collateral estoppel

"Collateral estoppel, which bars the relitigation of issues that have been adjudicated in a prior action, applies to an adversary proceeding challenging the dischargeability of a debt." *Beem*, 713 F. App'x at 983. "'If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect.'" *Id.* (citation omitted). For collateral estoppel to apply under Alabama law, Ms. Keeton must show the following:

> (1) the parties in the prior suit must be the same as parties in the present suit;
>
> (2) the issues to be litigated in the present suit must be identical to the issues litigated in the prior suit;
>
> (3) the issues in the present suit must have been actually litigated in the prior suit; and
>
> (4) the issues in the present suit must have been necessary for the resolution of the prior suit.

*See In re Barnett*, AP: 10-70023, 2011 WL 3555586, at *5 (Bankr. N.D. Ala. Mar. 4, 2011).

In her trial brief (doc. 10) and in her counsel's closing argument at trial, Ms. Keeton argued that the state court finding in her favor on the trespass claim "with an award of damages for mental anguish . . . would satisfy a finding that the injury giving rise to the debt was both willful and malicious." (*See id.* at p.10). But the state court judgment is written in the disjunctive and does not constitute an explicit finding of willfulness or maliciousness. The court is aware that under Alabama law, "[u]nless the trespass is attended with words or acts of insult or

contumely, damages for mental anguish are not recoverable." *See Jefferies v. Bush*, 608 So. 2d 361, 363 (Ala. 1992). However, without more specific findings by the state court judge, the court is not prepared to hold that an award of mental anguish damages in a trespass action under Alabama law must necessarily equate to a finding of willful and malicious injury under § 523(a)(6).

Additionally, the "willful" standard under § 523(a)(6) is not the same as the "intentional" act required for trespass under Alabama law. "Willful" in the context of § 523 "means 'a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.'" *Beem*, 713 F. App'x at 983 (citation omitted). In contrast, "[a]lthough trespass is an intentional tort, the intent required as a basis for liability as a trespass is simply an intent to be at the place on the land where the trespass allegedly occurred." *See Johnson v. City of Prichard*, 771 F. Supp. 2d 1310, 1316 (S.D. Ala. 2011) (citation, quotation marks, and brackets omitted). "'That is, the intent to do the act which leads to the trespass is the requirement, not the intent to actually trespass.'" *Kennedy v. Conner*, No. 2180063, 2019 WL 2401272, at *15 (Ala. Civ. App. June 7, 2019) (citation and emphasis omitted). Thus, the trial court could have found Mr. Short liable for trespass under Alabama law without a finding of willfulness, and the doctrine of collateral estoppel does not mandate a judgment of nondischargeability under § 523(a)(6).

Willful and malicious injury

Nevertheless, the court is persuaded that Ms. Keeton has shown by a preponderance of the evidence that the trespass was a willful and malicious injury. While Mr. Short testified that

7

he did not intend to injure Ms. Keeton's property,[3] the circumstantial evidence tends to establish otherwise.

The court does not find credible Mr. Short's testimony that he believed the property was actually his based on the bank survey.   Indeed, the deed for Mr. Short's property alerted him to a possible dispute before he ever met Ms. Keeton.   Then, Ms. Keeton put him on immediate notice that she claimed the disputed property and opposed his cutting the trees.   The first day he walked onto Ms. Keeton's property, Ms. Keeton told him that he was on her property.   The next time he walked onto her property, Ms. Keeton called the local authorities.   The fact that the sheriff's deputies – not a court of competent jurisdiction – refused to stop Mr. Short does not persuade this court that Mr. Short's actions were merely reckless or negligent.   Ms. Keeton always maintained to Mr. Short that he was on her property, but he decided to immediately move forward with clearing the property knowing that there was a significant dispute.

The evidence at trial leads the court to the conclusion that Mr. Short quickly cleared the property not because he genuinely believed there was no dispute, but because it suited his schedule best and was convenient for him, regardless of Ms. Keeton's rights or the near-impossibility of ever being able to "undo" his actions.   Mr. Short could have delayed cutting the trees on the disputed strip until both sides' surveyors had time to address the situation or, failing that, a court could determine the true boundary line.   However, Mr. Short decided to barrel ahead and cut Ms. Keeton's trees because he had already blocked out his available time off and he did not want to rent equipment a second time.   He knew that his cutting the trees was an act

---

[3] As discussed above, it is a rare case where a debtor will actually admit to intent to injure.   *See, e.g.*, *In re Yeager*, 500 B.R. at 551.

that was essentially irreversible since the trees were mature, not bushes or saplings that could be easily replaced. This is the exact kind of intentional act the purpose of which is to cause injury or which is substantially certain to cause injury that satisfies § 523(a)(6). The court is likewise of the opinion that Mr. Short's conduct implied a sufficient degree of malice for purposes of § 523(a)(6).

Conclusion

The court finds in favor of the plaintiff Deborah Keeton and against the defendant-debtor Joseph Norman Short, Jr. on the plaintiff's nondischargeability claim pursuant to 11 U.S.C. § 523(a)(6). The state court judgment entered in favor of the plaintiff for trespass in the amount of $25,000 is nondischargeable in the debtor's bankruptcy and the court will enter a separate nonfinal judgment to that effect.

Because the court has found the state court judgment nondischargeable, the court asks that the plaintiff file a motion to dismiss promptly, and no later than January 24, 2019, if she does not intend to pursue her remaining claim for nondischargeability under 11 U.S.C. § 727. Otherwise, the court intends to set this matter for a scheduling conference to set a trial date for the § 727 claim.

Dated: January 10, 2020

HENRY A. CALLAWAY
CHIEF U.S. BANKRUPTCY JUDGE